**FILED - LN**
March 15, 2010 2:42 PM
TRACEY CORDES, CLERK
U S DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
BY /_____

## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF MICHIGAN

UNITED RENTALS, INC. a Delaware )
Corporation, )
                                )
             Plaintiff, )
                                )
v.                                )     CIVIL ACT
                                )
GERALD DEMANN, an individual, )
                                )
      Defendant. )
                                )

**1:10-cv-258**
**Janet T. Neff**
**US District Judge**

March 15, 2010

## COMPLAINT FOR INJUNCTIVE AND OTHER RELIEF

NOW COMES the Plaintiff, United Rentals, Inc. and its affiliates (collectively "United" or "Plaintiff"), by and through its attorneys, Jackson Lewis, LLP, and for its Complaint for injunctive and other relief against Defendant Gerald DeMann (hereinafter "Defendant" or "DeMann") states the following:

### Nature of Action

1.      This action is based on Defendant's willful and intentional violations of the confidentiality clauses and restrictive covenants contained in a confidentiality and non-competition agreement signed and executed by Defendant DeMann, and sets forth claims for breach of contract, misappropriation of trade secrets (violation of the Uniform Trade Secrets Act), tortious interference with economic advantage and existing business relationships, and for violations of the Federal Computer Fraud and Abuse Act, 18 U.S.C. §1030 ("CFAA").

### Parties, Jurisdiction and Venue

2.      United is a Delaware corporation with its principal place of business in Greenwich, Connecticut. United is engaged in the business of, among other things,

selling and renting certain equipment/merchandise including construction equipment, aerial equipment, landscaping equipment, home repair and maintenance equipment, and contractor supplies throughout the United States, including Michigan. At all relevant times hereto, United operated a branch in Traverse City, Michigan.

3.    DeMann, upon information and belief, resides at 4480 Powell Lane in Kewadin, County of Antrim, State of Michigan, and is a citizen of Michigan.

4.    At all times relevant hereto and up to March 1, 2010, DeMann was an employee of United working as an Outside Sales Representative with an office located at United's Traverse City Branch.

5.    Jurisdiction over this matter arises under 28 U.S.C. § 1331 (federal question) and 1332 (diversity of citizenship) and 28 U.S.C. § 1367 (supplemental jurisdiction).   The amount in controversy exceeds $75,000, exclusive of interest and costs.

6.    Venue is proper in this Judicial District under 28 U.S.C. § 1391(b)(1) and (2), as the Defendant resides in this State and/or a substantial part of the events or omissions occurred within this Judicial District.

## General Allegations

7.    United's Traverse City Branch generates significant revenues from, among other things, the sale and rental of aerial and other construction equipment to its customers.   During his employment, DeMann contributed towards the revenues of the Traverse City Branch.

8.    As an Outside Sales Representative with United, DeMann had controlled access to certain of United's trade secrets.   United's trade secrets include, but are not

2

limited to, such things as: (1) gross rental data; (2) budget processes from market areas and rental projections; (3) marketing plans and strategies; (4) details of contracts; (5) actual and prospective customer data, including identities of United customers (i.e., United's customer list and customer contacts); (6) pricing and discount information; (7) cost information, including special programs and discount structures negotiated with particular equipment vendors; (8) information on the sources and nature of financing United is able to secure for its customers; and (9) fleet information, including its make-up, cost and utilization.

9. United's trade secrets and other confidential information are only shared with employees as necessary, and only to those who agree to keep it confidential.

10. Much of United's confidential information is contained on United's RentalMan/WYNNE computer system and/or other customer relationship management tools, access to which is password protected and limited to authorized employees. Moreover, United's employees are responsible for updating and documenting certain confidential information obtained during the course of their employment in United's protected computer system and/or on laptops or related devices.

11. None of the foregoing trade secrets discussed above was known or open to the public and United undertook reasonable measures to keep its trade secrets and proprietary information confidential and out of the public domain.

## DeMann's Agreement

12. In order to protect its customer goodwill, confidential information, and trade secrets, United requested that DeMann enter, and DeMann agreed to enter, into a confidentiality and non-competition agreement ("Agreement").

3

13.     The Agreement, contained a proscription against disclosing or improperly

using United's confidential and/or secret information.

14.     Section 1 of the Agreement contains the following provisions, to which

DeMann agreed, that outlines and defines "Confidential Information" as follows:

> (f)    Confidential Information includes, but is not limited to:
>
>> (i)     business, pricing and management methods;
>>
>> (ii)    finances, strategies, systems, research, surveys, plans, reports, recommendations and conclusions;
>>
>> (iii)   names of, arrangements with, or other information relating to, the Company's customers, equipment suppliers, manufacturers, financiers, owners or operators, representatives and other persons who have business relationships with the Company or who are prospects for business relationships with the Company;
>>
>> (iv)    technical information, work products and know-how;
>>
>> (v)     cost, operating, and other management information systems, and other software and programming; and
>>
>> (vi)    the name of any company or business, all or any substantial part of which is or at any time was a candidate for potential acquisition by the Company, together with all analyses and other information which the Company has generated, compiled or otherwise obtained with respect to such candidate, business or potential acquisition, or with respect to the potential effect of such acquisition on the Company's business, assets, financial results or prospects.

15.     Section 2 of the Agreement contains a restrictive covenant, which

DeMann accepted, that restricts DeMann from, among other things, competing directly

or indirectly with United, within a limited Restricted Area, during his employment and 24

months thereafter. Specifically, the Agreement provides:

> (a)    During his . . . employment by the Company and for a period of 24 months immediately following the termination of his . . . employment for any reason whatsoever, whether or not for cause,

4

> Employee will not, directly or indirectly (whether through affiliates, relatives or otherwise):
>
> (i) in any Restricted Area (a "Restricted Area" means within a 90 mile radius of 4195 Meadow Lane Drive, Traverse City, Michigan 49684) be employed or retained by any person or entity who or which then competes with the Company to any extent, nor will Employee directly or indirectly own any interest in any such person or entity or render to it any consulting, brokerage, contracting, financial or other services or any advice, assistance or other accommodation;
>
> (ii) solicit or accept the business of, or call upon, any person or entity who or which is or was (A) a customer, supplier, manufacturer, finder, broker, or other person who had a business relationship with the Company, or who was a prospect for a business relationship with the Company, at any time during the period of his . . . employment, or (B) an affiliate of any such person[.]

16. DeMann entered into the Agreement "in consideration of employment with URI, and in further consideration of URI's agreement to pay six months severance to be distributed on the twelfth month of separation...," as well as other good and valuable consideration.

17. A copy of the Agreement is attached as Exhibit A to this Complaint.

## Breaches/Tortious Conduct of DeMann

18. On or about March 1, 2010, DeMann resigned his employment at United.

19. At the time of his resignation, DeMann advised United that he had secured employment with Titan Equipment Services, Inc. ("Titan") at 6190 Clyde Park SW, Byron Center, Michigan 49315. Notably, the address provided by DeMann for Titan is outside of the Restricted Area as defined in the Agreement.

5

20. Titan is engaged in the business of, among other things, selling and renting certain equipment/merchandise including construction equipment, aerial equipment, and contractor supplies, and is a direct competitor with United.

21. Titan conducts business in and around Traverse City, Michigan and operates a branch in said city.

22. United subsequently learned that, contrary to DeMann's representation, DeMann was actually working at the Titan branch located at 4195 Meadow Lane Drive, Traverse City, Michigan, which is the *epicenter of the Restricted Area* as defined by the Agreement.

23. Upon information and belief, DeMann maintains an office with Titan in Traverse City and/or within the Restricted Area in violation of DeMann's obligations under the Agreement.

24. Upon information and belief, DeMann has now begun marketing and/or providing competitive products and/or services within the Restricted Area in violation of DeMann's obligations under the agreement.

25. Upon information and belief, DeMann has begun targeting United's customers in violation of DeMann's obligations under the agreement.

26. Upon information and belief, DeMann has used or inevitably will use the valuable confidential trade secrets of United for his own benefit or for the benefit of Titan and/or he will provide same to Titan. Indeed, United has information that DeMann has already begun visiting, contacting, and/or soliciting United's customers, and is engaging in such conduct within the Restricted Area.

27. DeMann committed the acts alleged herein with knowledge that his conduct would harm the financial interest of United.

28. DeMann committed the acts alleged herein for his own benefit and for the benefit of Defendant Titan.

### COUNT I – Breach of Contract

29. United realleges and reincorporates herein by reference the allegations set forth in Paragraphs 1 through 28 above as though fully set forth herein.

30. United and DeMann executed and entered into the Agreement on or about April 1, 2002.

31. United and DeMann exchanged good and valuable consideration in support of the Agreement including, but not limited to, "consideration of employment with URI, and in further consideration of URI's agreement to pay six months severance to be distributed on the twelfth month of separation…."

32. United duly performed all of its obligations pursuant to the Agreement.

33. Upon information and belief, DeMann has breached the Agreement in one or more of the following ways so far as is presently known:

> a. DeMann is working for a competitor of United's within the Restricted Area;

> b. DeMann is actively competing with United in soliciting United's customers;

> c. DeMann is utilizing United's trade secrets and/or confidential information in conjunction with his efforts;

7

    d.      DeMann is using confidential and/or secret information in a ways other than directed;

    e.      DeMann removed confidential and secret information from the premises of United without prior written consent;

    f.      DeMann failed to return to United all originals and copies of confidential and/or secret information within his possession custody or control;

    g.      DeMann has disclosed confidential and/or secret information to Titan;

34.      The aforementioned actions constitute a material breach of the Agreement by DeMann, including the restrictive covenants contained therein.

35.      DeMann's conduct as set forth in this Complaint further constitutes a material breach of the implied covenant of good faith and fair dealing.

36.      As a proximate result of DeMann's wrongful conduct, United has suffered and will continue to suffer irreparable harm and money damages.

37.      As a result of the foregoing activities, DeMann is liable to United for breach of contract. United has suffered, and will continue to suffer, substantial and irreparable damages to its business and customer good will, as well as losses in an amount in excess of $75,000.00, but not yet fully ascertained, and which will be further determined according to proof.

38.      Only through the issuance of an injunction can DeMann be prevented from continuing violations of the Agreement.

8

39.     DeMann's actions, taken in direct and knowing violation of the Agreement executed between Plaintiff United and Defendant DeMann, have caused and will continue to cause irreparable damage to Plaintiffs in that: (i) United's trade secrets are unique and valuable property that have no readily determinable market value; (ii) the Defendant's actions constitute interference with United's goodwill and customer relations; (iii) the Defendant's wrongful conduct and the damage resulting therefrom is continuing; and (iv) Defendant acknowledged in writing that a breach of the Agreement would constitute irreparable harm to United.

## COUNT II -   Trade Secret Misappropriation in Violation of the Uniform Trade Secrets Act

40.     United realleges and reincorporates herein by reference the allegations contained in Paragraphs 1 through 39 above as though fully set forth herein.

41.     As an Outside Sales Representative for United, DeMann had access to United's trade secrets and confidential information, including, but not limited to the following:

   a.     United's confidential customer lists that are not readily ascertainable from public sources.    United spent considerable time, energy and money cultivating these customers.

   b.     United's confidential financial information and cost and profit margins. These figures are not available to the public and are held in confidence by United.

   c.     United's cost information and discount information from certain vendors.  United has been able to negotiate special terms with vendors that are not readily ascertainable by competitors and are terms that are kept in confidence by United.

   d.     United's fleet information, including its make-up, cost and utilization. This information is not available to the public and is held in confidence by United.

      e.     United's marketing plans and strategies, including United's potential satellite operations and other expansion plans.

42.    The aforementioned trade secrets are not known to all United employees, nor are they known to those working in the industry or to United's competitors. United's trade secrets were conveyed confidentially to DeMann, as necessary, in order to allow DeMann to fully carry out his job responsibilities on behalf of United.

43.    United took reasonable measures to keep the trade secrets confidential. As stated above, only certain employees had access to trade secrets. Trade secret information was provided only to those who, like DeMann, agreed to keep such information confidential.   Indeed, United required DeMann to sign a confidentiality agreement protecting the integrity of this information.

44.    This information is highly valuable to United, and could enable United's competitors to challenge pricing and vendor relationships and/or steal private customer lists.

45.    United spent considerable sums of money acquiring, maintaining and guarding this information.

46.    Upon information and belief, DeMann misappropriated United's trade secrets when he began soliciting customers, using his knowledge of whom to contact, their product and service demands, and United's preferential pricing and terms.

47.    Upon information and belief, DeMann misappropriated United's trade secrets when he wrongfully used those trade secrets on his own behalf and on Titan's behalf, and when he, on information and belief, provided Titan with knowledge of these trade secrets.

48.     There is a substantial threat that DeMann will continue to use and disclose United's trade secrets in an effort to acquire United's customers for the benefit of his new employer and himself personally.

49.     DeMann willfully and maliciously misappropriated United's trade secrets, in that DeMann intended to solicit customers for his own personal financial interest, all to the detriment of United.

50.     DeMann's wrongful conduct is a violation of the Uniform Trade Secrets Act, which has been adopted and enacted by Connecticut and Michigan.

51.     As a direct and proximate result of Defendant's wrongful conduct, United has suffered and will continue to suffer irreparable damages and money damages unless enjoined.

52.     As a direct result of Defendant's willful conduct, United is entitled to punitive damages and attorneys' fees.

53.     Based on Defendant's unlawful acts as alleged herein, United is being irreparably harmed in that: (i) United's trade secrets are a unique and valuable property that have no readily determinable market value; (ii) the Defendant's actions constitute interference with United's goodwill and customer relations; (iii) the Defendant's wrongful conduct and the damage resulting therefrom, is continuing; and, (iv) Defendant DeMann acknowledged, in writing, that a breach of the Agreement would constitute irreparable harm to United.

## COUNT III - Tortious Interference With Prospective Economic Advantage and Existing Business Relationships

54.     United realleges and reincorporates herein by reference the allegations of Paragraphs 1 through 53 above as though fully set forth herein.

55.     This Count states a claim for relief against DeMann for tortious interference with United's prospective economic advantage and existing business relationships with United's customers.

56.     Economic relationships have existed between United and its customers and other entities, which have been advantageous to United.

57.     Being in the business of, among other things, renting and selling aerial and other general rental equipment within Traverse City and the surrounding area, United has developed valid and existing business relationships with hundreds of customers with the probability of future economic benefit for United.

58.     United's Traverse City Branch historically generate significant revenues, which are a result of United's substantial time, effort, training and resources devoted to developing business relationships with its customers.

59.     As an Outside Sales Representative for United, DeMann was aware, and had knowledge of the existence of the relationships United enjoyed with its customers.

60.     Upon information and belief, in spite of this knowledge, DeMann wrongfully interfered with United's prospective economic advantage and existing business relationships by soliciting United's customers and disclosing United's trade secrets and proprietary information, all in violation of the Agreement.

61.     DeMann engaged in these acts with full knowledge and/or recklessness and want of ordinary care in that such acts or omissions would necessarily interfere with or disrupt the economic relationships that United enjoyed with its customers, and these acts demonstrate DeMann's intentional or negligent conduct.

62.     Upon information and belief, DeMann directly interfered with the economic relationships United enjoyed with its customers.

63.     If not for the conduct of DeMann, United was reasonably certain to have entered into continued business relationships with its customers.

64.     DeMann's conduct was intentional and willful in that DeMann intended to harm United's economic and financial interest.

65.     DeMann's conduct was wrongful and not justified, privileged or excusable.

66.     As a direct and proximate result of Defendant's wrongful conduct, United has suffered and will continue to suffer irreparable harm, as well as monetary damages insufficient to fully remedy United.

### COUNT IV - Violation of the CFAA, 18 U.S.C. § 1030

67.     United realleges and reincorporates herein by reference the allegations set forth in paragraphs 1 through 66 above as though fully set forth herein.

68.     United's computer system, as well as the individual computer provided by United to DeMann, qualifies as a "protected computer" as that term is defined by the CFAA.

69.     Upon information and belief, DeMann intentionally accessed a United computer, without authorization or exceeding his authorized access, and thereby altered, impaired the integrity or availability of, and/or otherwise damaged the data, programs, system or information contained on United's protected computer.

70.     DeMann became unauthorized to access United's computer system upon accepting employment with a competitor and/or deciding to become an agent for a

competitor and/or upon acting or intending to act for the benefit of himself and/or Titan, as opposed to United.

71.    DeMann, knowingly and with intent to defraud, accessed United's computer system without authorization, or exceeded his authorized access, and by means of such conduct furthered the intended fraud and altered and/or damaged United's confidential and valuable information and data.  The value of this information and data in the hands of a competitor and/or for United to recreate such data greatly exceeds $5,000.

72.    DeMann intentionally accessed United's computer system without authorization and, as a result of such conduct, damaged United, in that he impaired the confidentiality, integrity, and/or availability of United's data, program, system and/or information, which damage/loss greatly exceeds $5,000.

73.    United's loss, including the value of the impaired/damaged data, the cost of responding to DeMann's offense, conducting a damage assessment and itemizing and/or restoring the data at issue, as well as the revenue that United has lost, costs it has incurred, and other direct and consequential damages as suffered by reason of DeMann's alteration and/or destruction of United's data and confidential information for the benefit of United's competitor, greatly exceeds $5,000.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff United respectfully requests judgment in its favor and against Defendant as follows:

1.    That the Court enter an Order, preliminary and permanently enjoining DeMann from violating the terms of the Agreement, from misappropriating, using, or disclosing United's trade secrets, confidential information, and/or any data misappropriated from United's computer/computer system, and from tortiously interfering with United's business expectancies;

2.    That the Court enter an Order, requiring the Defendant to return to United all remaining copies of United's trade secrets and confidential information and to not retain same for his own use or benefit;

3.    That the Court award United compensatory damages arising out of Defendant's unlawful conduct alleged herein;

4.    That the Court award United punitive damages pursuant to the Uniform Trade Secret Act;

5.    That the Court award United its attorneys' fees pursuant to the Uniform Trade Secret Act;

6.    That the Court award United punitive/exemplary damages, attorneys' fees, expenses, interest, and costs, pursuant to the Agreement and/or common law;

7.    That the Court award United compensatory damages and injunctive relief or other equitable relief under the CFAA, 18 U.S.C. § 1030(g); and

8.    That the Court grant United such additional relief as is just and proper, including, but not limited to the imposition of a constructive trust and disgorgement of all

compensation and other benefits which Defendant has derived or will derive as a result

of his violation of the Agreement.

Respectfully Submitted,

JACKSON LEWIS LLP

BY: _____

THOMAS W.H. BARLOW (P10443)
EMILY M. PETROSKI (P63336)
JOHN C. SIGNORINO (P60527)
Attorneys for Plaintiff
2000 Town Center, Suite 1650
Southfield, MI 48075
(248) 936-1900

Dated this 15th day of March, 2010.

16